And at this time we'll hear Tilian v. Town of Delhi and Tilian. May it please the court, counsel. Your honors, I don't know quite how to begin with this case because I'd really like to dig into the facts. I'm sure you've read the briefs. I will say that in 35 years of practicing law and all kinds of litigations, this is really one of the ugliest set of facts that I've ever seen. My client truly got a raw deal from these defendants, and the idea that I can't get to a jury on these facts to me is just astounding. Mr. Tilian and his ex-wife, defendant Sherry Tilian, in 1990 they built a house on property they owned in a remote section. How do you establish that this malicious prosecution claim was terminated in your client's favor? Well, what happened was he was found guilty at the trial court level, in the justice court. The county court reversed it, said that the statute that they charged him under only applied to the owner of the property. He didn't own the property. Sherry Tilian owned it. So the case was terminated at that point. There was no more case. The town then filed a notice of appeal, and what happened was... We tend to assume that there's an appeal pending, the matter's not over, because otherwise we just waste our time here. Well, under New York law, and the case is clear that under federal law, the elements are the same as New York law, I cited a very old case for the New York Court of Appeals. It was withdrawn by stipulation, right? Yes, but it was not a compromise settlement. What happened was Peter Bracey, the defendant, was voted out of office. Mark Tuthill, the new supervisor, really had sympathy for Mr. Tilling. In fact, you can see from his voicemail message that was... Or it was an email, I forget which, saying, you know, we're going to extricate you from this nightmare. It wasn't a compromise settlement. They dropped everything. They withdrew the appeal. But the property was brought in compliance, and brought in compliance by your client, even though he wasn't the owner, right? Oh, that's correct, Your Honor. So to that extent, the city or the town did get something. It had wanted this property brought in compliance, and ultimately your client, even though he wasn't the owner, did that. And they dropped the appeal. Well, Your Honor, that is a very sanitized view of what happened. I know it's a shortened version, but it does deal with the fact that this did not necessarily just mean that everything was dropped, and your client, whose whole basis for winning was he didn't own the property, didn't do anything. He did do something. Well, what he did was he finally, Mr. Matheson, after all these months, a $100,000 fine in the town of Delhite. That is just astounding. I know that one of the judges here was a town council member, a village council member, and a mayor in a large municipality. This is the town of Delhite, a $100,000 fine for buildings that were built years before. The statute of limitations certainly would have run by then. After they let Sherry Tellian off the hook, Mr. Tellian loses his business because the town immediately converts the fine to a judgment. They freeze all his bank accounts, including his corporate account. They get a TRO forcing him off the property. Finally, after all these months, Mr. Matheson finally comes up to the property, and with $174 worth of whatever they had to do, he issues the building permits and the certificates of occupancy. The appeal was still going on because Peter Bracey was still the supervisor. It was only when a new supervisor came in, said, Ernie, we're going to end this nightmare for you. We're going to drop everything. We're going to give you back the money that we took out of your accounts. And they withdrew the appeal. There is no longer an appeal here. It's not a compromise settlement. I submit to you that this is really a case of first impression. The case that the district court cited is quoted from it saying if the charge is withdrawn, then it's not a termination on the merits in the defendant's favor. The charge wasn't withdrawn here. The appeal was withdrawn. I couldn't find a single case in this circuit or anywhere other than this Connecticut case that I cited, which is pretty closely on point, saying this was really not a compromise settlement. The question is not before me, but I think under these circumstances, it may be really a question of fact as to whether this ---- Is there any record of the terms of the settlement? It was just a stipulation of settlement where the ---- The appeal was withdrawn, right? But was there any agreement signed by ---- I don't think so other than the stipulation of the settlement, but I don't recall, Your Honor. The court document that was filed. Yes, it was a ---- I don't know if they filed that stipulation with the appellate division or they just didn't perfect it. I don't know, but there was a stipulation of settlement that was signed by the parties. But it was not a compromise settlement. It was just the town just capitulated because this poor man, frankly, had had quite enough at this point. He had to go on to social services. He went into a deep depression. He went on medication. He got counseling, all because of what these people did. Why? Because his ex-wife, whose father was a former town supervisor, who was the immediate predecessor to Peter Bracey. Peter Bracey, who had a grudge against my client for two reasons, because Mr. Tellian's father, when he was a sheriff of Delaware County, wouldn't recommend Mr. Bracey for a state trooper position, and because Mr. Tellian, when he was a deputy sheriff, served process on Mr. Bracey during his divorce. Now, of course, Mr. Bracey denies that, but both Mr. Matheson testified, admitted one thing, that he had a grudge against Ernie for one of those things, and then Joan Kuzan, who's a non-party, said that it was well-known that Peter Bracey had a grudge, I think she called it a vendetta, against Mr. Tellian. In fact, when they had this meeting after Mr. Bracey was out of office, he said, I'm not done with the E-man yet. And I asked both Ms. Kuzan, and this is all in the papers, I know the facts are complicated, Ms. Kuzan and Ms. Tellian, who were both at the meeting with Mr. Bracey, did he say that, and the responses were, he might have, which to me is like saying, yes, he did say that. This was a vendetta against Mr. Tellian, and as far as the eco-protection claim goes, I really think the court below very much did what I said they did. They took on the role of the jury. They did a very, they parsed all of these issues about whether these were similar situated comparators with Mr. Tellian, and the decision reads like a jury deliberation, and the court below drew every inference in favor of the defendants, and did exactly the opposite of what he should have done in reviewing a summary judgment motion. The number one most similarly situated comparator is Mrs. Tellian, because the charges were for building these outbuildings without a building permit, and for not having a final certificate of occupancy. That all happened, well, before the estrangement. While Mrs. Tellian was still living on the property, she was the owner of the property, and this prosecution against her was a sham. You see in my brief the miserable message that she was leaving for him, showing up at his job sites and harassing him, showing up at his house and harassing his visitors. She sends him this letter with the picture that she drew on it about letting the cat out of the bag, just before she goes to talk to the building inspector and says, oh, do we have a certificate of occupancy for the house? And, by the way, there are some outbuildings out there that might have been built without building permits. That's what started the whole ball rolling. And first Mr. Matheson tells Mr. Tellian, don't worry, I'll come up and we'll work it out. And then he keeps putting him off, putting him off, putting him off. And then he finally says, well, Peter Bracey, and there were some teeth pulling to get this out of him, so the town told me, well, don't go and do the inspection. Let the court figure it out. Let the court decide what to do. And it turns out Peter Bracey told him to do that. And then he had told Mr. Tellian originally we're going to charge Sherry for the violations as the owner of the house because the town attorney told us to do that, and then Bracey says, no, charge the two of them. And it was a sham against Sherry Tellian. Shortly before the trial, she leaves a voicemail message for Matheson, the building inspector, giving him information needed, helpful for the prosecution. And then she goes to the trial, even though she's represented by an attorney in the divorce. She has no attorney. Mr. Tellian sees her winking at the court clerk, who is a friend of hers. Now she disputes that, but that's a question of fact. He sees her with her head next to the prosecutor giggling across the courtroom. And she admits that, but she says it was for show. She admits giggling. Yeah, she says that they had gone into a room and she came out and she was saying to him, oh, I feel like I'm in court so often these days because she'd been in for a DWI or something like that. And then at the end, we also have other things here. I asked her father, who is one of the most evasive witnesses I've ever seen during his deposition, did you ever speak to Mr. Bracey about this prosecution? And his response was something like, well, if I did, it was as quick as a breath of air. I think what happened here is clear. They did a sham prosecution against her. She's helping out the prosecution. She's giggling with the prosecutor. She's winking at the court clerk. Next thing you know, she's found not guilty because she doesn't live on the property anymore. Oh, I'm sorry. My time is up. You've reserved a minute's rebuttal, so next thing you know, we'll hear from the other side. I get carried away sometimes. Good morning. Good morning. Stephen Gaba for the town of Delhi, Annapolis, Bracey, and Matheson. For an equal protection class of one claim, a very high degree of similarity is required between the plaintiff and his lawyer. What about Mrs. Tellian? I mean, it's exactly the same, isn't it? She was treated exactly the same. The only claim of a differential here is this conspiracy theory, which the plaintiff has propounded. The giggling theory. Well, she said that she laughed she'd been hauled into court for, I believe it was DWI a short time before, and she said to, he's the town attorney from Albany, Castiglione is his name, and she said, oh, I spend too much time here, ha, ha, ha. But the idea that they were off making Mary in a corner or something simply isn't supporting, even if it was. Let's say she giggled in court. That can't support a jury finding that there was some grand conspiracy here, that Judge Gumo was going to hear the case but not find, you know, against her and would find in favor of him. And Castiglione isn't even, there's no allegation he was in the conspiracy anyway. And in fact, Wouldn't the conspiracy have to include Judge Gumo? Well, Judge Gumo was the finder of law and fact. Not in her favor, but against her. Yeah, if they don't have him in the conspiracy, how is there even a conspiracy? I mean, the proof that was submitted was against her as well as against Mr. Tellian, and in fact, all the briefs submitted by Cass, the town attorney, asked for both of them to be held liable or found guilty, and both of them to be fined equally. So, I mean, this Can I ask you about the favorable termination issue for malicious prosecution? Absolutely. Did Mr. Tellian give up anything in exchange for the settlement agreement? Well, in terms of giving up, I would say that he gave up any claim for costs on appeal. But I think Judge Raggi really hit it on the head here. There's no way there's a settlement in this case unless these outstanding violations had been resolved. It's what the town wanted all the time, and this is the whole point of the prosecution. So the town achieves that, and now it's looking at $60,000 in attorney's fees that are outstanding, which it will never recover because Mr. Tellian just doesn't have the assets to pay that kind of thing, and a heck of a lot more as it looks at two appeals going forward. So there's no way that this was simply — I mean, on these facts, no jury could find that this is simply a unilateral discontinuance with no concessions or no action whatsoever to result in that settlement by Mr. Tellian. The whole point of this was to get him to go and get the building permits and the COs, and after much trial and tribulation, he submitted the as-bills, paid the fees, had the inspections done, and got his building permits. That's why this case settled. And I would like to add on that point in — How was he able to do that if he didn't own the property? How was he able to do that if he didn't own the property? Well, he submitted applications for building permits, which he signed based upon his exclusive use and occupancy as almost a tenant, if you will, under the order entered in the divorce proceeding. The town was willing to accept that in the circumstances of this case. I think perhaps they would have been within their rights in saying, no, you're not the owner, but again, they wanted to resolve the matter, and so they did accept it, and they went forward with the inspections, and it was — well, I won't say it was as simple as that. It was an awfully rough inspection, if you've read the record. Mr. Tellian made it rather unpleasant. But I'd like to return to my point regarding the 1983 malicious prosecution claim. It doesn't rest solely on the issue of favorable termination. I know that was the lower court's rationale for dismissing it, but I can't imagine a case where you would have a more clear, undisputable circumstance of probable cause than here. I mean, it's conceded. Mr. Tellian built, or at least co-built, these buildings. He maintained these buildings. He resided in one of them and used all the others, and under the town code, if you build, use, reside in buildings without a building permit or a CO, it's a violation of the code. It's also a violation of the parallel local law, what is it, No. 1 of 2007, which the town enacted. It's conceded he did all that. I mean, there was clearly probable cause here. The only reason for the dismissal, the reversal on appeal, was the county court judge found that, well, they charged him under the town code. They didn't charge him under specifically local law No. 1 of 2007. Had they under local law No. 1 of 2007, he would be guilty. And again, I think the county court was just wrong on this. They say that under the town code, you have to be an owner. It's not enough if you're an occupier or a tenant or anything else. That is a purely procedural dismissal. Purely procedural dismissal is not a favorable termination. So, I mean, that's, I think, another ground for dismissal of the 1983. Well, I mean, that ground suggested that he could not have violated the statute. Well, yeah, but it was a procedural. I mean, that would be favorable. Well. All anybody would want, isn't it? If, in fact, there was no other statute, it might be favorable. But the town, and clearly Judge Gumo, thought he was also being charged under local law No. 1 of 2007. There's a discrepancy in the amount of the fee that can be charged, you see. But you'd have to win that on appeal to argue to us that, to make that argument to us. Otherwise, if the county court's decision were affirmed on appeal, you could never make the argument to us that, oh, well, there's a different statute and different. I mean, this is for New York courts to decide. And you do not have a favorable decision on that just yet. That's true. That's true, Your Honor. But my point isn't that the county court was wrong, although I do feel that to be the case. My point is that it's a procedural dismissal. When you have appearance ticket dismissed on, you were charged under this statute as opposed to that statute. Yes, you would be liable or could be liable under this statute, but you weren't charged. I don't know what that means in a criminal case. It's a procedural dismissal. I mean, right now, it's a dismissal of the charges. I mean, he's acquitted of them under the county court's decision. Well, no, he wasn't acquitted of them, Your Honor. What was found was that the appearance tickets did— Well, let's put it this way. You don't have a judgment of conviction. I do not. Yeah. I do not. Can I return to the equal protection for just a moment? Very briefly. Very briefly, Your Honor. All the other comparators that were listed were people who, when told they needed a building permit, went out and got a building permit. They never denied that they needed a building permit. They weren't in a situation where they're conflicting claims as to who was responsible for it. I mean, very clearly, as far as those comparators go, certainly, I think, the town was entitled to say, we're going to bring this issue to court and let the judge decide who's responsible. That provides a rational basis for distinguishing him from those comparators, even if, and I don't think you could, even if they could be found to be incomparably situated to him. And lastly, I think that it shouldn't be overlooked in this case that Defendants Bracey and Matheson have a qualified immunity defense. I think the facts support that, at a minimum, they could reasonably believe that they were not violating a constitutional right in the case of Matheson, prosecuting it, and allegedly, as far as Bracey goes, instituting this prosecution. Because again, he was in violation of the town code and the local law in regard to these building permits. I think any town official in these circumstances would say, if he's not going to come in for a building permit, we have to commence enforcement proceedings. Thank you. Thank you. Good morning. Morning. May it please the court. My name is Ryan Manley of Harris, Conway, and Donovan. I'm here today on behalf of Defendant Appellee Sherry Tillian. Your Honors, Mr. Gabbin made a lot of the arguments that I was going to stand up here and present today with regards to the conspiracy. I'll try not to beat a dead horse, but I'll just focus in on a couple points. First of all, if the court does find that a constitutional violation does survive this appeal, it would be my position that the conspiracy claim can still fail, and that my client's claim against my client can still be dismissed for the conspiracy. In sum, the plaintiff alleges that my client, his ex-wife, was the orchestrator of the sham prosecution that involved herself, the former town supervisor, the then current town supervisor, the code enforcement officer, the special prosecutor, the judge, and the court clerk. I submit to you, Your Honors, that no rational jury could find it such, and that my client's role in agreeing that the charges would be a sham against her is the only conspiracy allegation against her. That even assuming all the facts that the plaintiff has presented is true, that there was a giggle in the court, or that there was a wink in the court, or that my client did go with bad intentions to the code enforcement officer's office, which I submit to you that she did not, there's no evidence of any agreement. There's no evidence of any meeting of the minds here. Did the town appeal the decision as to her, Judge Goodwin's decision as to her, and could it? I don't believe that they did, Judge. I know that the special prosecutor did supplement a brief to the court, actually pleading with the court to also find my client guilty as well, which I think is evidence against this whole conspiracy. My client can't be a willful participant if her interests and the town's interests are adverse from each other. Essentially what he's saying is it was Sherry Tillian's idea that she get charged as well, and that's simply not the case. The record simply does not support it. The reality is is that Sherry Tillian and Ernie Tillian were both charged because this dispute involved marital property, and they were both charged equally with code enforcement violations. They then were both tried after they were both given appearance tickets. Ernie was convicted based upon the fact that he had exclusive use and control of the property. Even then, as we've already discussed, the special prosecutor still insisted that she be found guilty. Now, if they're colluding with each other, what the special prosecutor, who is a partner of a law firm in Albany, is arguing in court and submitting with his papers doesn't make any sense. Now, the plaintiff in his papers has asked for a pass on his lack of evidence in terms of showing a meeting of the minds or any agreement whatsoever, and that conspirators meet in dark places and they don't meet in the light. I submit to you, Your Honors, that if you're going to launch very serious allegations against a judge, a special prosecutor, town officials, and bring my client's personal and very emotional divorce into the United States Second Circuit Court of Appeals, you have to have more, and you have to have evidence of an agreement, evidence of meeting of the minds, and not just these tangential relationships or these theories of why people may have motives against the plaintiff. And with that, Your Honors, if there aren't any other questions, based on the foregoing, I'm going to ask that the Court uphold the District Court's decision in dismissing the amended complaint. Thank you. Thank you very much. One minute for rebuttal, Your Honor. You have a minute for rebuttal. Just very quickly. We didn't sue the judge. I think he was part of the conspiracy, and we think that's for a jury to figure out. You claim that he's hiding behind his absolute immunity. Yes, and they raise that point. So your idea is he was involved in the conspiracy, but he's hiding behind his immunity. And we believe he has absolute immunity for his judicial act, and we think he's basically an unindicted co-conspirator is what we believe. In terms of the probable cause, they couldn't have charged Mr. Telling under the 2007 law because all the buildings were built before then. That would have been an ex post facto law. The town attorney told Mr. Matheson that they could only charge Sherry because she's the owner, but Peter Bracey overruled that. But Sherry Telling was very much a part of this sham prosecution. The jury could very well find that the prosecutor is going through a show. So you ask that the same fine be imposed against her. And I think the point raised that the town didn't appeal the dismissal of the charges against her. I don't know they could have, but they didn't. That's a significant fact. If they couldn't have, the fact that they didn't doesn't admit any inference. Yes, I know. Why didn't the client bring the property into compliance if it wasn't his? Well, I mean, he had to do something. He'd been trying to get it into compliance all during the fall, the late summer and fall of 2011, and he'd been calling Matheson saying, please, come up here and inspect it. He was willing to do it, and Matheson wouldn't do it. And then he finally says, look, we're going to take it to court and let the court decide. And this idea that these other comparators cooperated right off the bat, a couple of them did, but several of them did not. Matheson told them they were violating the law. You have to come and get your building permit. You have to get your CFO. They didn't do it. He sent follow-up letters. Finally, he charges them. And what does he do? Did he say, let the court decide? We're not going to let you get off the hook this easy? No. They say, okay, you got your building permit, you got your CO, you can go on your merry way. So, Your Honors, you can't take facts in isolation. This is a case because Mrs. Tellian winked at the court clerk, and that was all I had. I wouldn't be here. When you read these facts from start to finish, this is a really, really horrendous story. And everyone I tell this story to can't believe it. And my client's life was ruined. And if I can't get to a jury on that, as I said at the beginning, I will be truly astounded. Thank you. Thank you. Thank you all. We'll reserve decision.